Case 25—PETITION EQUITY—April 16.

# Sternberger, &c., v. Gowdy.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. HOMESTEAD—APPLICATION OF PAYMENTS.—Partial payments upon an open current account should be applied to the items of the account in the order of their date. And in determining whether a debtor is entitled to a homestead as against the balance of an account, some of the items of which were created before the erection of the improvements on the land sought to be subjected, and some of which were created subsequent thereto, partial payments on the account should be first applied to the earlier items, and if sufficient to extinguish the items created prior to the erection of the improvements, the debtor is entitled to a homestead as against the entire balance of account.

2. SAME—MATERIAL-MAN'S LIEN.—A debtor is entitled to a homestead as against a debt created for materials used in the erection of the improvements on the land sought to be subjected, unless the creditor took the steps required by Article 1 of Chapter 70, General Statutes, in order to create a lien for materials furnished.

J. R. ROBINSON FOR APPELLANTS.

The lien ought not to have been given on the homestead to pay appellee's judgment for $137.60, or any part of it. If the appellee ever had any lien it was waived by the execution of the note upon which judgment was rendered. Besides, there never was any claim set up under the mechanic's lien law. Appellee can not now be allowed to pick out certain items from the two accounts for the unpaid balance of which the note was executed and say that these certain items in the aggregate of $137.60 make the sole consideration for said $137.60 note.

THOMAS H. HINES FOR APPELLEE.

The evidence is sufficient to suport the finding of the lower court that appellee's debt was created prior to the erection by appellant of his improvements, and, therefore, appellant is not entitled to a homestead.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

In January, 1885, the appellant, who was a housekeeper with a family, purchased one hundred acres of land

lying in Taylor county, Ky., near Campbellsville, Ky., for the purpose of residing thereon with his family. Not long after the purchase of land the appellant erected a residence house thereon, and moved into it as a house-keeper with a family about the 6th day of June, 1885. The appellant also purchased one-third of an acre of land, adjoining said one hundred acres, for the purpose of completing an eligible building spot, which formed a part of the yard of the residence. The appellant, about the 1st of May, 1885, opened a running account with the appellee, he being a dry-goods merchant, in the purchase of goods. The account ran until some time in August, 1885, the appellant making, from time to time, partial payments thereon. The account was closed in August by the appellant executing his note to the appellee for one hundred and thirty-seven dollars and sixty cents, the supposed balance due. Some time after the note was executed the appellee sued the appellant upon it. The appellant resisted payment upon the ground that the appellee had not given him credit by all the sums of money that he had paid him, which he pleaded as an offset to the note.

The issue was tried, which resulted in a judgment for the appellee for the full amount of the note. Execution was issued on the judgment, and the one-third of an acre of land was sold under the execution. Afterwards a portion of the one hundred acres of land was sold to satisfy the balance, and the appellee purchased both pieces. The appellant and his wife then filed a petition in equity against the appellee, alleging that they had executed two mortgages on the land, which created a lien on the same, that was superior to any claim of the appellee

thereto, and which was superior to any homestead claim of theirs; but that they held a homestead right as against the claim of the appellee. They also pleaded as an offset the sum of three hundred and eighty dollars, which they allege the appellant deposited with the appellee on the 20th day of March, 1885, which he had never accounted for. The appellee put in issue these matters, a trial of which resulted in favor of the appellee upon both of them. The appellant has appealed from that judgment. The appellee bases his right to subject the land to this debt without reference to a homestead therein, upon two grounds, to-wit:

*First*, About ninety dollars of the account was created before the erection of the residential improvements on said land.

*Second*, That about eighty dollars of the account were for materials furnished in the erection of said improvements.

On the second ground it is sufficient to say that the appellee did not take the steps required by chapter 70, General Statutes, in order to preserve a lien on the land for the materials furnished; therefore, the appellee acquired no right that was superior to the appellants' homestead right.

As to the first question, it appears the partial payments made by the appellee were more than sufficient to pay the items of the account created before the erection of the improvements. Then the question is: Should said items be first extinguished by said payments? If yea, the appellant is entitled to his homestead as against the debt sued on. If nay, he is not entitled to a homestead as against said debt.

Says 1 American Leading Cases, page 358, fifth edition: "The rule with regard to an open current account, the items of which do not form distinct debts but are blended together in one account, is that the payments shall be applied, as they are paid, to the charges in the order of time in which they accrue."

In accordance with the foregoing views, the case of Pierce v. Sweet, 33 Pa. St., 157, says: "There was no evidence of any appropriation by the debtors, none of any by the creditor. Nor were there any intended appropriations by the debtors. Nichols himself testifies that the payments were general,—that is, not on any particular account. When they were made there were no persons interested in directing an appropriation except the debtor and the creditors; no persons to be injured by any application. Neither of the parties then having made it, the law designates how the payments are to be applied; and, in such case, it deems them to have been made first in discharge of the earliest liabilities of a running account." The principle upon which this rule is founded is that, in such case, it allows the creditor to appropriate the partial payments upon such items of the account as are most precarious. In accordance with these views it was said, in the case of Hammer's Adm'rs v. Rochester, 2 J. J. Mar., 144: "In case of litigation, the chancellor would see that the payments were applied so as to effectuate justice. Thus, the chancellor should not apply the credits to the specialty debts and leave unpaid a simple contract which would thereafter be barred by the statute of limitations. The payment of debts likewise, in the order of time they became due, is a circumstance which should not be without its in-

fluence." In Blanton v. Rice, 5 Mon., 253, the com-
plainant had undertaken to pay the defendants certain
claims due to them by a third person; one of these
was due by a replevin bond, in which the complainant
was surety; and the others, by a simple undertaking not
yet settled by judgment. A general payment having been
made, the court said: "It is evident that the demand
which the complainant insists upon to be first extin-
guished is best secured, and in such a case it is deemed
equitable to apply the credit to the debt, the security of
which is most precarious."

It seems to be the common law rule that the law applies
partial payments in matters of running accounts to those
items that are most precarious. And as the first items of
the account may be first barred by the statute of limita-
tations, the partial payments must be applied to them in
the absence of an agreement or understanding to the
contrary.

But, it is said that, as the application of the credits to the
payment of the first items of the account would deprive
the appellee, as creditor, of his recourse upon appellant's
land for the payment of his debt, he, if the rule announced
prevails, deprives him of his right to make the application
of the partial payments so as to protect him in his rights.
In answer to that proposition, it is sufficient to say that
in case of the exemption of property from execution or
coercive sale for the satisfaction of debts, the rule that
the partial payments shall be so appropriated as to protect
the creditor, does not apply so as to reach property that
would be otherwise exempt from execution or the coercive
payment of debts, any more than such payments would
revive a debt barred by time.

As to the off-set of three hundred and eighty dollars, while the proof is strong that the appellant deposited it with the appellee on the 20th of March, 1885, yet the old suit, in which the appellant seems to have strained every nerve in the defense of the claim, which resulted in a judgment against him, the said item, so important to his defense in that suit, was not relied upon.     That fact, coupled with the other evidence in the case, convinces us that the appellant is mistaken in reference to that matter.

The one-third acre of land was a part of the homestead, and as the appellant is entitled to a homestead as against the said debt of the appellee, the judgment is reversed with direction to set aside the sale of the one-third acre of land and a portion of the hundred acres, and to allow the appellant a homestead therein as against the said debt of the appellee; but no homestead is allowed as against the said mortgage debts.